# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

Securities and Exchange Commission,
Plaintiff

vs.

Case No. 3:09-cv-00298-N

Stanford International Bank, LTD, et al,
Defendants

Related Appeals
*SEC, et al v. Stanford,* 23-10530
*SEC, et al v. Stanford,* 23-10689
MDL Case No. 3:09-md-2099



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 2 2 2023
CLERK, U.S. DISTRICT COURT
By ___KAF___
Deputy

---

**NOTICE OF APPEAL
PURSUANT TO F.R.A.P. 4(A)**

---

WITH

---

**APPELLANT'S CERTIFICATE OF GOOD FAITH AND NON-FRIVOLOUS INTENT
TO TRAVEL WITH AND BE CONSIDERED AS PART OF THE RECORD ON APPEAL**

---

TO: HON. DAVID C. GODBEY, CHIEF U.S. DISTRICT JUDGE FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

1

Robert Allen Stanford, Appellant *Pro Se*, hereby gives 'Notice of Appeal' of the Final Judgment and Bar Order entered on August 8, 2023, in the Toronto Dominion, HSBC, and Independent Bank portion of the five-part Settlement Agreements reached in **_Rotstain, et al. v. Trustmark National Bank, et al._ (_Rotstain Litigation_)**, Case No. 4:22-cv-00800, S.D.Tex.) (Docs. 3330, 3331, 3332).

Additionally, and to preemptively address the Appellee's (third) Motion To Dismiss under Fifth Circuit Rule 42.2, which the Appellee has indicated he intends to also file in this appeal, the Appellant herein includes, with this 'Notice of Appeal', this 'Appellant's Certificate of Good Faith and Non-Frivolous Intent To Travel With And Be Considered As Part Of The Record On Appeal', and asks the Clerk to forward it, along with the 'Notice of Appeal', to the Fifth Circuit Court of Appeals.

## CONSOLIDATION OF APPEALS UNDER F.R.A.P. 3(b)(2)

Because this 'Notice of Appeal' concerns the (third) in a five-part series of appeals in this global Settlement Agreement, each with an in-common and dispositive issue raised by the Appellant in the Written Objection(s) he filed in the District Court, involving the District Court's subject-matter jurisdiction, and because the Judicial Panel on Multi-District Litigation (JPMDL) has previously consolidated these (and other) separately-filed cases against these 'Bank Defendants' under the caption 'Stanford Entities Securities Litigation', the Appellant respectfully suggests that, in the interests of judicial economy, the Fifth Circuit may want to consolidate this and all other future appeals in this matter, under F.R.A.P. 3(b)(2).

2

## STATEMENT OF THE ISSUE TO BE REVIEWED
## AND REASON THIS CERTIFICATE IS WARRANTED

"We start, as always, with jurisdiction. Article III subject-matter jurisdiction is always first". **_United States v. Shkambi_**, 2021 U.S. App. LEXIS 10053 (5th Cir. 2021)

The issue in this appeal concerns a clear and indefensible violation of the territorial boundaries of a federal jurisdictional statute, 28 U.S.C. 124(a)(1), and a District Court's Article III jurisdiction; the willful disregard for, and knowing failure to administer, the Receivership proceedings in this case in accordance with this federal jurisdictional statute, and all other governing law under the Federal Rules of Civil Procedure; a judicial defiance of well-established law that is well-recorded, and flouted the territorial boundaries of that District Court's congressionally-established and limited, Article III jurisdiction, as merely suggestive.

This is an exceptionally important jurisdictional issue, in an internationally important case; a case involving the sudden loss of billions of investment and life-savings dollars to thousands of individuals around the world; a case where this 'end-all' and repeatedly presented jurisdictional question has been side-stepped and unanswered since the day of those financial losses, for more than fourteen years, rejected and dismissed as "frivolous and without merit"... by both the SEC, District Court and Receiver-Appellee...all the while refusing to cite to an actual District Court judgment after a review on the merits to confirm it. This is because, contrary to the Receiver-Appellee's assertions that the District Court has "repeatedly

3

rejected" this jurisdictional issue, and purposefully diversionary rhetoric as shown here, no such judgment exists.

"Mr. Stanford files only frivolous motions that do nothing but waste the Court's time and the precious resources of the Receivership", the Receiver-Appellee has claimed throughout these appellate proceedings in his 'Motions To Dismiss' under FCR 42.2, successfully managing to convince the Fifth Circuit to dismiss his prior appeals with this jurisdictional issue, as "frivolous and without merit"... immediately after his payment of the $505.00 filing fee and prior to any actual briefing.

As a result of this type of diversionary rhetoric, fourteen years later, this exceptionally important jurisdictional question - that Mr. Stanford, and these thousands of individual investors deserve to have addressed on the merits and answered, could so easily be dispensed with by the SEC, District Court and Receiver-Appellee, by citing to a directly responsive judgment; confirming, once and for all, that, as asserted by the Appellee, this is just another of his "frivolous and without merit" filings. But instead, after more than fourteen years of unnecessarily costly and protracted litigation, this question, that has clearly been placed "fairly in doubt" by this Appellant, and just as clearly is anything but "frivolous", remains judgment-free and unanswered.

If allowed to proceed on appeal, and no matter the diversionary rhetoric, Mr. Stanford will prove the genuine nature of this jurisdictional question, a issue of material fact that deserves to be addressed and answered...because, as in all cases and controversies brought in the U.S. District Courts, and no matter any other arguments or affirmative defenses..."[f]ederal courts are of limited jurisdiction and

possess only that power authorized by Constitution and statute." *Arbaugh v. Y& H Corp.,* 546 U.S. 500 (2006) The U.S. Supreme Court has repeatedly admonished the lower Federal Courts about the importance and continuous need for judicial monitoring of the "[j]udicial administration of a jurisdictional statute". *Hertz Corp. v. Friend,* 559 U.S. 77, 80 (2010). Of equal importance, the Supreme Court has also repeatedly reminded about the Court's "[r]ule favoring clear boundaries in the interpretation of a jurisdictional statute"; and because "[s]ubject-matter jurisdiction can never be forfeited or waived, it should be considered whenever placed fairly in doubt"., quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

To confirm beyond all doubt the existence and genuine nature of this issue, the Appellant will present documentary evidence taken from the record that when considered using basic common sense, will indisputably place the District Court's Article III subject-matter jurisdiction **"fairly in doubt"**; and in so doing, will establish beyond any reasonable doubt, the fact that for the past fourteen years the actions of the District Court here, relative to the Receivership proceedings, represent judicial actions taken in the complete absence of all jurisdiction - which also triggered the exception to absolute judicial immunity; a 'manifest abuse of authority' and miscarriage of justice similar, in certain relative respects, to the jurisdictional issue in *The Mitchell Law Firm, LP v. Bessie Jeanne Worthy Revocable Trust,* 8 F.4th 417 (5th Cir. 2021), where this Court found... (The "subject-matter of the action was so plainly beyond the court's jurisdiction, that its entertaining the action was a manifest abuse of authority.")

# CERTIFICATE OF GOOD FAITH AND NON-FRIVOLOUS INTENT

This Certificate of Good Faith and Non-Frivolous Intent is warranted in this appellate proceeding because the Appellee, Ralph S. Janvey, has previously moved in the Fifth Circuit for the dismissal of a related appeal, under Fifth Circuit Rule 42.2, on grounds that the Appellant raises only a 'frivolous and non-meritorious' jurisdictional issue that, according to the Appellee, has been rejected by the District Court numerous times; a claim to which he does not, and cannot, cite to any 'judgment on the merits' from the District Court... because there has never been such a judgment, and therefore none exists in the record. (See, 'Appellee's Motion To Dismiss Appeal' (Doc. 11), filed on June 12, 2023)

And further, the Appellee(s) move to dismiss the prior appeal as 'frivolous' on interlocutory motion, marginalizes, inter alia, the applicable statutory purpose, constitutional protections and limitations, and Local Rules governing receiverships, and is simply intended to act as a 'red herring' to divert away from his financially-motivated and corruptly-reasoned deception.
That is, with the hundreds of millions of dollars in attorney fees to be paid out in these proceedings, money that is now in suspension and at risk of loss in these proceedings, the Appellee has attempted to mislead the Fifth Circuit to believe that **(1)** no jurisdictional laws have been violated, and **(2)** that the Appellant (Mr. Stanford) is gaming the system, and **(3)** that he is merely dissatisfied with the District Court's rulings, and **(4)** is once again only seeking retribution in another frivolous and vexatious proceeding, and **(5)** that the Appellant has a long history of such exercises in harassment, and should be estopped by this Court once and for all.

In his interlocutory motion, and with practiced legerdemain, the Appellee attempts to convince the Court that his and the other attorneys' only goal in this settlement proceeding is to protect the interests of the "Stanford victims". And that it is patently absurd for Mr. Stanford to suggest that actions taken by the Receiver and/or his so-called "Team of Professionals" in that legal pursuit could ever have dispossessed the District Court of its original (exclusive) subject-matter jurisdiction - and its Article III-derived power to preside over and render decisions in this case and controversy.

Again, this alternate-universe-version of the facts is not supported by any entry in the official record and would not survive the Fifth Circuit's thoughtful and impartial scrutiny in a full appellate briefing and merits review.

In sum and substance, these "***Rotstain Litigation***' appeal proceedings concern a constitutionally and statutorily prohibited act that stripped the District Court of its Article III authority to preside over and render judgments in the **"Main Action"** case, and all other Stanford-related cases; that is, all ancillary proceedings in equity arising from the enforcement action filed by the Securities and Exchange Commission on February 16, 2009, against Robert Allen Stanford, and the global group of financial services companies he owned and bearing his name.

## ARGUMENT

The Appellee's move to dismiss the related appeal as "frivolous" prior to any actual briefing, asks the Court to accept his version of the facts as actual, irrefutable and dispositive, which they clearly are not, and forecloses the Appellant's ability, and legal right, to challenge a clear and present jurisdictional violation that for the past

7

fourteen years, and to this day, has underpinned the SEC's civil enforcement action like quicksand. And by relation, every ancillary action that has flowed from it; a decisively fatal jurisdictional defect that the Appellant has never waived or forfeited, and never could.

If permitted to proceed on appeal, the Appellant will show, with clear and convincing evidentiary proof, the indisputable fact that on February 17, 2009 and immediately following his appointment by a federal court in the Northern District of Texas, Dallas Division, the Receiver-Appellee promptly departed the confines of the Northern District of Texas, Dallas Division, and established his **'principle place of business'** for the entirety of all Stanford Receivership Estate operations and administrative activities, to a series of locations in the Southern District of Texas, Houston Division - and more specifically, to first the headquarters and offices of the Stanford Financial Group at 5050 and 5051 Westheimer, and then to other locations in the Houston area - locations from where, a full fourteen years later he continues to conduct all Stanford Receivership Estate operations and administrative activities; a decisive action taken in knowing defiance of the congressionally-established territorial boundaries of the Northern District of Texas, as set forth in 28 U.S.C. 124(a), as well as in knowing defiance of the explicit mandates of his Order Appointing Receiver, the Local Rules of the District Court, and all other jurisdictional and receivership-governing law. And to be clear, the Receiver's multiple District Court filings of notices that he intended to sell Stanford-owned assets in those other federal districts, pursuant to 28 U.S.C. 754, does not in any way change these facts, or provide him with any 'administrative' authority beyond this congressionally limited 'asset-sale' mandate.

This *'ultra vires'* 'relocation' action, therefore (which serves as confirmation of the SEC's 'improper forum manipulation'), taken in the complete absence of all jurisdiction, served to divest the District Court in the Northern District of Texas of its original (exclusive) subject-matter jurisdiction, and in equal measure and, inter alia, stripped both the District Court and its court-appointed Equity Receiver (Ralph S. Janvey) of their absolute judicial immunity. See, **_Davis v. Bayless_**, 70 F.3d 367, 373 (5th Cir. 1995) ("Court appointed Receivers act as arms of the Court and are entitled to share the appointing judge's absolute immunity, provided that the challenged actions are [not acts of willful malfeasance or gross negligence] taken in good faith, and fully within the scope of the authority granted to the Receiver.")

The jurisdictional facts presented here very clearly are acts of willful malfeasance and constitutional violations; 'ultra vires' actions that just as clearly were not authorized by the 'Order(s) Appointing Receiver' (Docs 10, 157 and 1130), and thus could never be construed as taken in good faith; actions that therefore serve to nullify all absolute judicial immunity.

And overarching all, at least for the specific grounds and limited focus of this appeal, this prohibited, extra-jurisdictional action served to legally poison each and every main and ancillary action taken by the District Court in this case; to include, but not limited to, the 'Settlement Agreement' and 'Final Judgment and Bar Order' at issue here.

See first, **_SEC v. Safety Financial Services, Inc_**. 674 F.3d 368,373 (5th Cir. 1982)("A district court abuses its discretion where it declines to consider challenges to its subject-matter jurisdiction, or where its rulings are clearly

9

erroneous and there is legal error"); *Hotze v. Burwell*, 784 F. 3d 984 (5th Cir. 2015) ("No matter how important the issue, federal courts are of limited jurisdiction and possess only that power authorized by the U.S. Constitution and statute"); *Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006) ("When a federal court concludes that it lacks subject-matter jurisdiction in a civil case, the court must dismiss the complaint in its entirety")

Then see, *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2015) ("Judicial immunity not available where actions, though judicial in nature, are taken in the complete absence of all jurisdiction"), citing *Stump v. Sparkman*, 435 U.S. 349 355-56 (1978) and *Mireles v. Waco*, 502 U.S. 9, 11, (1991)

Simply put, no matter the dense and enduring fog of "**frivolous and vexatious**" labeling and alternate universe-based facts from the Appellee, the jurisdictional issue at the heart of these appeal proceedings is real and easily verified, dispositive, and beyond all possible affirmative defenses and diversionary rhetoric, and absolute judicial immunity protections.

And further, contrary to what the Appellee told this Court in the interlocutory motion, nowhere in the cited 'Notice of Appeal' (Doc. 1) did the Appellant, Robert Allen Stanford, mention, refer to, or ever even allude to, his parallel criminal conviction - a judgment that is not a part of the 'Final Judgment and Bar Order' at issue here; it is a separate (criminal) matter that is currently being appealed in the Fifth Circuit Court, and having nothing at all to do with this (civil) appeal.

And moreover, while the District Court has indeed..."rejected"...this poisonous and fatal jurisdictional challenge on prior occasions - by merely "overruling an objection", or in the form of disregarding silence - contrary to the Receiver-

Appellee's assertion, such judicial acts do not constitute **'final judgments on the merits'** ...triggering either *res judicata*, or collateral estoppel.

At bottom, no matter how many different ways and times the Appellee may assert his false and diversionary rhetoric, his alternate universe-based facts, the actual and verifiable facts, and statutory-territorial limitations controlling this case, will never yield a different reality; never serve as one territorial boundary that encompasses both the Northern District of Texas and the Southern District of Texas. Simply put, no matter what **'affirmative-defense'** arguments the Receiver-Appellee may submit, such arguments could never serve as acceptable substitutes for a real and citable judgment on the merits, one that shows the Receiver's ***'ultra vires'*** actions as lawful.

Moreover, steadfast in his diversionary rhetoric and alternate universe-based facts, and ***'ultra vires'***-defending defiance, a full fourteen years later, through every of the Appellant's well-articulated and fact-supported challenges, and beyond the appointing (host district) District Court's congressionally-established and expressly limited powers of judicial action, and its territorial jurisdiction to judicially supervise/oversee all Stanford operations, and ongoing administrative activities, the Receiver-Appellee **CONTINUES** to maintain his **'principle place of business'** for the entirety of all administrative activities and operations of the Stanford Receivership Estate, in Houston, there in the Southern District of Texas...and now **CONTINUES** his enduring deception in the Fifth Circuit Court of Appeals with the same "**don't believe your eyes, believe what I tell you**" rhetoric that for more than a decade, has been sufficient in each of the many District Court proceedings, and provided a false appearance of righteousness, and lawfulness.

## While This Case Is Certainly *'sui generis'* In A Great Many Ways And Respects It Is Not Entirely A Case Of First Impression

In *'The Mitchell Law Firm, LP v. Bessie Jeanne Worthy Revocable Trust'*, 8 F.4th 417 (5th Cir. 2021), the Fifth Circuit Court was presented with a similar case involving another Texas law firm's intentional misrepresentation of the jurisdictional facts simply to secure a sizeable money judgment, a 'paradigmatic void judgment' where the District Court lacked subject-matter jurisdiction. Ultimately, the Court held that..."It would be quite something if a party could invoke federal jurisdiction under false pretenses, then invoke the limits of federal jurisdiction just to keep tens of thousands of dollars of ill-gotten gains".
After which, and in its remedial opinion, it held that..."It is axiomatic that power is inherent in every Court to undo what it had no authority to do originally." citing, *N.W. Fuel Co. v. Brock,* 139 S.Ct. 216, 219 (1981)

The indisputable jurisdictional facts cited here by the Appellant, at this pre-briefing stage, are similar enough to those in *'The Mitchell Law Firm'* case to at least place 'fairly in doubt' the District Court's subject-matter jurisdiction in this case; similar enough to warrant a full appellate briefing and merits review. See, *Feds For Med. Freedom v. Biden,* 30 F. 4th 503 (5th Cir. 2022) ("Subject-matter jurisdiction is the Court's statutory or constitutional power to adjudicate the case. *Steel Co. v. Citizens For A Better Environment,* 523 U.S. 83, 89 (1998). That requirement cannot be forfeited or waived and should be considered whenever "fairly in doubt". *Ashcroft v. Iqbal,* 556 U.S. 662, 671 (2009)") (emphasis added)

12

# The Judicially Noticeable And Verifiable Facts Under Fed. R. Evid. 201, Found In The Official Record, Settle The Jurisdictional Issue Here With Indisputably Decisive Force

Neither the Receiver-Appellee, the SEC, the District Court, or any of the many parties in this putative class action have ever attempted to directly address and make a countervailing argument to refute these **'improper forum manipulation'**, and **'extra-territorial' facts**...and they never could. Because no matter what 'other-worldly' facts they may submit in that process, they will never surface and submit, citable, **"judgment-on-the-merits"** support, from the official record.

It should also be noted here that, although Mr. Stanford has repeatedly challenged the SEC's allegations of a massive fraud, and its **'improper forum manipulation'** by filing their enforcement action in the Northern District of Texas, Dallas Division, instead of in the Southern District of Texas, Houston Division, where the Stanford Financial Group of companies were known to be headquartered (and in particular, the SEC-regulated Stanford Group Company)...and where literally the day after his appointment as Receiver, Ralph S. Janvey immediately established his 'principle place of business'...**NO LAW FIRM** involved in this case has ever sought to challenge this forum decision; **EVEN AFTER** the presiding Honorable David C. Godbey, there in the Northern District Court, made clear in the ancillary case, _Janvey v. Alguire_, Civil Action 3:09-cv-0724-N (N.D Tex. 2009)("Although the Stanford entities were located nationally and internationally, the court finds that the entire network operated as a single entity headquartered in Houston, Texas."); and **EVEN AFTER** in _Thornton v. Syny Logistics, Inc_. 2020 U.S. Dist LEXIS 96058 (N.D.Tex. 2020), this same presiding judge himself noted the controlling

**'improper venue/forum manipulation'** precedent in <u>*Daimler AG. v. Bauman*</u>, 571 U.S.117 (2013), where it was held... ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as **'at home'**; place of incorporation and principle place of business are thus paradigm bases for general jurisdiction. Those affiliations have the virtue of being unique--that is, each indicates only one place--as well as easily ascertainable.").

<u>**NOTE:**</u> At no time did Mr. Stanford ever reside in, or own any property in, anywhere in the Northern District of Texas; and his **'nationally and internationally'** located Stanford Financial Group of financial services companies were both incorporated in, and headquartered in, and thus regarded as **'at home'** in, Houston, Texas...in the Sothern District of Texas.

**Moreover ...**

**EVEN AFTER** Mr. Stanford timely-filed his pro se 'First Responsive Answer' (Doc. 249), followed by a timely-filed *pro se* 'Motion To Dismiss under Fed. R. Civ. P. 12(b)(3), Or In The Alternative Motion To Transfer Venue under 28 U.S.C. 1404(a)' (Doc. 3173), wherein he cited to the complementary venue holdings in <u>*Atlantic Marine Construction Co., Inc. v. U.S. District Court*</u>, 571 U.S. 49 (2013), and <u>*Daimler AG v. Bauman*</u>, 571 U.S.117 (2013), and this same presiding judge, David C. Godbey, **DENIED** the motion, by finding Mr. Stanford had procedurally **"waived and forfeited"** this improper venue/forum argument by not first raising it in a manner consistent with the procedures in Fed. R. Civ. P. 12(h)...where one of the cited procedures is in a ..."**First Responsive Answer**" (Doc. 3227), still there

14

was only deafening 'silence' from associated counsel. With an untold number of law firms and literally hundreds of highly experienced attorneys involved in some phase of the Stanford litigation, mostly defending against the numerous "clawback" actions filed by the Receiver-Appellee, Ralph S. Janvey, and his counsel, it has, paradoxically, come as no surprise to Mr. Stanford that none of these highly experienced attorneys has ever made a parallel challenge to the SEC's indisputably clear 'improper forum manipulation'.

He knows that, with their typically financially-motivated reasoning, they had simply adhered to the maxim...'what you say can and will be used against you'; that is, in this case, against their ('bank clients') balance sheets.

## In sum...

Mr. Stanford would submit that this 'silence' of others, relative to the obviously **'improper forum manipulation'** in this case, this total disregard for all statutory requirements and precedential decisions of the Supreme Court, and Fifth Circuit, is the collective result of nothing other than financially-motivated reasoning; explained by the utterly obscene amount of attorney fees that for the past fourteen years have been generated by, and paid out in the course of, the Stanford litigation; that is, literally billions of dollars that, had any one of these attorneys pointed out the legally obvious that, inter alia, the SEC should have filed this enforcement action in Southern District of Texas, and not in the Northern District of Texas...would not be in their bank accounts.

## Frivolous And Vexatious Litigant

And finally, it should also be noted here that in his (2018) 20-page motion asking the District Court to declare Mr. Stanford a vexatious litigant who repeatedly files only frivolous and meritless motions, the Receiver-Appellee used these dismissive, descriptive terms no less than 30 times. This motion (Doc. 2676), which was nothing other than a thinly-veiled attempt to silence Mr. Stanford and keep his poisonous jurisdictional facts out of the disinfecting sunlight, was expected to effectively bury the merits of his motions, their indisputable truths, in the darkness of dirt, *sub rosa*; expected that, with these labels, Mr. Stanford would get the message that, from behind the stigmatizing label "**Ponzi scheme**", any lawless act of the Receiver would be viewed as an acceptable means to an end, justified on behalf of the "Stanford victims".

This Honorable Court is now asked to choose between validating the allegations in the Receiver-Appellee's 20-page motion, or shoveling off the fourteen years of dirt that has effectively kept this extra-territorial jurisdictional violation hidden, far away from a meaningful **'judgment on the merits'** review.

Put bluntly, this Honorable Court is asked to unearth the clear and indisputable truth; to find whether the Receiver-Appellee's **'frivolous, vexatious and meritless'** assertions are valid and grounds for dismissal of these appeal proceedings- or whether the Appellant's **'unlawful relocation'** claim is real and factually accurate; that as the Appellant has attempted to show in motion after motion over the past fourteen years...the SEC, the District Court and Court-appointed Receiver have actually been perpetuating and successfully concealing a shockingly real and indefensible jurisdictional fraud; a fraud they all know, if ever exposed to the

disinfecting sunlight, will give rise to a barrage of lawsuits under 28 U.S.C. 959, and 42 U.S.C. 1983 on grounds of knowingly 'willful malfeasance' (959), and knowing violations of Constitutional protections (1983), along with years of **"boomerang litigation"** stemming from the Receiver's fourteen years of lawsuits under the 'Bankruptcy Code', the 'Texas Long Arm Statute', and the 'Texas Uniform Fraudulent Transfer Act' (TUFTA); litigation that will involve more billions of dollars in compensatory and punitive damages, demanding that the SEC, the District Court, and the Court-appointed Receiver..."undo [and compensate for] what they had no authority to do originally."

## CONCLUSION

Because the foundational jurisdictional facts presented here have been presented to the District Court numerous times over the past fourteen years in motion after motion, in seriatim, and been conspicuously sidestepped each and every time, the Appellant respectfully asks the Fifth Circuit to consider the actual and indisputably dispositive *'ultra vires'* facts contained here and in the 'Appellant's Principal Brief', prepared for the related appellate proceeding (23-10530) which he attaches here as an APPENDIX.

Or in the alternative, he asks that the Court issue an order to the Receiver-Appellee requiring him to provide it with more than his usual..."**don't believe your eyes, believe what I tell you**"...rhetoric; that is, citable and verifiable proof in the form of a District Court judgment after a meaningful review on the merits, that the District Court has previously addressed this *'ultra vires'* jurisdictional issue, and found it lawful.

Date: August 10, 2023

Respectfully submitted,

*Robert Allen Stanford*

Robert Allen Stanford

Appellant, *Pro Se*

Reg. # 35017-183

FCC Coleman USP II

P. O. Box 1034

Coleman, Florida 33521

## CERTIFICATE OF SERVICE

I, Robert Allen Stanford, Appellant *Pro Se*, hereby certify that on this 10th day of August 2023, I placed an exact copy of this 'Certificate of Good Faith and Non-Frivolous Intent' in the U.S. Mail addressed to the United States Securities and Exchange Commission, and to counsel for each of the parties in this putative class.

## CERTIFICATE OF SERVICE

I. Robert Allen Stanford, Appellant, *Pro Se*, hereby certify under penalty of perjury, 28 U.S.C. 1476, that on this 10th day of August 2023, I served a copy of this 'Notice of Appeal with Appellant's Certificate of Good Faith and Non-Frivolous Intent To Travel With And Be Considered As Part Of The Record On Appeal', to the following parties, via e-mail:

Michael A. King, MKing@trustmark.com
Peter Kazanoff, pkazanoff@stblaw.com
Roger B. Cowie, rcowie@lockelord.com
Robin C. Gibbs, rgibbsbruns.com
James R, Swanson, jsanson@fishmanhaygood.com
Edward C. Snyder, esnyder@casnlaw.com
Kevin M. Sadler, sadler@bakerbotts.com
David J. Schneck, dschenck@dykema.com
Mark A. Castillo, markcastillo@ccsb.com
Peter D. Morgenstern, morgenstern@butzel.com

*Robert Allen Stanford*

Robert Allen Stanford,

Appellant, *Pro Se*

USPS Priority Mail Flat Rate Envelope label.

US POSTAGE PAID $9.65
Origin: 33036
08/16/23
1143350036-05

PRIORITY MAIL®
0 Lb 4.50 Oz
RDC 01

EXPECTED DELIVERY DAY: 08/19/23

C001

SHIP TO:
1100 COMMERCE ST
STE 1452
DALLAS TX 75242-1310

USPS TRACKING #
9505 5155 9981 3228 5647 25

PS00001000014
EP14F July 2022
OD: 12 1/2 x 9 1/2

FROM:
Robert Allen Stanford
35017-183
P.O. Box 1034
Coleman, FL 33521

TO:
U.S. District Court
1100 Commerce St., Room 1452
Dallas, TX 75242